# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JULIUS LIPP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 2026-0493-DH |
| MIXEDBREAD AI, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## <u>REPORT</u>

Report: August 10, 2026
Date Submitted: June 24, 2026

William Burton, Brittany M. Giusini, Gabriella Mouriz, BARNES & THORNBURG; Prasanth Chennakesavan, TUFFAHA CHENNAKESAVAN MANDLEKAR LLP ; *Attorneys for Petitioner*.

Sean T. O'Kelly, O'KELLY & ROURKE, LLC; Jeffrey T. Lindgren, VASQUEZ BENISEK & LINDGREN LLP; *Attorneys for Respondent*.

**HUME, IV, M.**

Once again, parties meet on the well-worn turf of the advancement battlefield. But these parties ask me to tread upon a new plot. The company dismissed a founding member who then filed suit against the company for terminating him without cause. The company counterclaimed and asserted affirmative defenses. Accordingly, the member sought advancement. In response and in an effort to end the member's advancement, the company dismissed the counterclaims and amended the four affirmative defenses that triggered advancement. But are the member's response to affirmative defenses advanceable? And, if advanceable, what must the company do to end that advancement? In this fact-specific exercise, I hold that responses to affirmative defenses are advanceable when they implicate the member's conduct in his official capacity. I also hold that the company's interrogatory responses can limit indemnification when they are a clear representation that the company will not bring advanceable litigation against the member.

## I.  BACKGROUND[1]

### A.  The Parties

Plaintiff Julius Lipp ("Lipp") was one of Defendant Mixedbread AI, Inc.'s ("Mixedbread") founders.[2]  Lipp also served as Chief Technology Officer ("CTO") and as one of three members of the Board of Directors ("Board").[3]  Lipp served as an officer and employee under an employment agreement (the "Employment Agreement").[4]  Mixedbread is a Delaware corporation with its principal place of business in California.[5]

---

[1] The facts are drawn from pleadings and other documents of record.  Unless otherwise noted, pleadings, along with associated declarations and exhibits, are cited by reference to items docketed in C.A. No. 2026-0493-DH ("D.I.").  Citations are to: Verified Petition of Julius Lipp v. Mixedbread AI, Inc., D.I. 1 ("Pet."); Respondent Mixedbread AI, Inc.'s Answer to Verified Petition for Advancement, D.I. 10 ("Ans."); Petitioner's Brief in Support of Motion for Summary Judgment, D.I. 15 ("POB"); Respondent's Brief in Support of Cross Motion for Summary Judgment, D.I. 14 ("ROB"); Petitioner's Brief in Opposition to Motion for Summary Judgment, D.I. 18 ("PAB"); Respondent's Answering Brief in Opposition to Cross Motion for Summary Judgment, D.I. 19 ("RAB"); and the Draft Summary Judgment Hearing Transcript ("Tr.").

[2] Pet. ¶ 2.

[3] *Id.*

[4] *Id.*

[5] *Id.* at ¶ 9.

**B.    The Employment Agreement and Bylaws**

In May 2025, Lipp and Mixedbread entered into the Employment Agreement that permitted Mixedbread to terminate Lipp for cause at any time.[6]  "Cause" was defined as follows:

> "Cause" shall mean the occurrence of any of the following: (1) Employee's continuous failure to substantially perform Employee's duties hereunder; (2) Employee's theft, fraud, dishonesty or breach of fiduciary duty as relates to the Company's business or property; (3) Employee's material failure to abide by applicable codes of conduct or policies or engagement in moral turpitude or conduct which is materially injurious to the Company monetarily or otherwise.

Mixedbread also adopted Bylaws that include indemnification and advancement provisions for directors and officers.  The indemnification section reads:

> 6.1 **Indemnification Of Directors And Officers**
>
> The corporation shall, to the maximum extent and in the manner permitted by the Delaware General Corporation Law, indemnify each of its directors and officers against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the corporation. For purposes of this Section 6.1, a "director" or "officer" of the corporation includes any person (a) who is or was a director or officer of the corporation, (b) who is or was serving at the request of the corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, or (c) who was a director or officer of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation.

---

[6] Pet., Ex. B.

The advancement section reads:

6.3 **Payment Of Expenses In Advance**

Expenses incurred in defending any action or proceeding for which indemnification is required pursuant to Section 6.1 or for which indemnification is permitted pursuant to Section 6.2 following authorization thereof by the Board of Directors shall be paid by the corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of the indemnified party to repay such amount if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that the indemnified party is not entitled to be indemnified as authorized in this Article VI.

C.      **Lipp's Termination and the California Litigation**

On June 30, 2025, Mixedbread terminated Lipp as an officer and employee.[7] On September 29, Lipp and Julius Lipp Holding, UG, a German Limited Liability Company (the "LLC") filed suit against Mixedbread in the Northern District of California ("California Action").[8] The LLC, managed by Lipp, holds 4.5 million shares of Mixedbread common stock.[9] The California Action included five claims- a breach of contract claim by Lipp against Mixedbread for terminating him without

---

[7] *Id.* at ¶ 17.

[8] *Id.* at Ex. B.

[9] *Id.* at Ex. B, ¶¶ 1–2.

cause in violation of the Employment Agreement, and four additional claims brought by the LLC against Mixedbread.[10]

Mixedbread filed an Answer in the California Action on October 30 asserting three counterclaims and sixteen affirmative defenses against Lipp.[11] Lipp answered the counterclaims on November 20.[12] On December 15, Lipp made a formal demand for advancement under Bylaws sections 6.1 and 6.3.[13] On January 7, 2026, Mixedbread sought an order in the California Action dismissing its counterclaims.[14] A day later, the California court approved Mixedbread's request, but Mixedbread retained the affirmative defenses.[15]

Mixedbread served initial verified interrogatory responses on March 27, 2026.[16] Lipp filed this Petition on April 15. Mixedbread served amended interrogatory responses on April 27.[17] Several of these amended interrogatory responses pertained to the affirmative defenses. Related to the Third Affirmative

---

[10] *Id.* at Ex. B.

[11] *Id.* at Ex. C. Only four of the sixteen affirmative defenses are at issue here.

[12] *Id.* at ¶ 23.

[13] *Id.* at ¶ 28.

[14] *Id.* at ¶ 24.

[15] *Id.* The parties agree that the affirmative defenses for consideration by the Court in this advancement case are the Third, Fourth, Tenth, and Twelfth Affirmative Defenses.

[16] *Id.* at ¶ 26.

[17] POB, Decl. Ex. 9.

Defense, Mixedbread's amended interrogatory response conceded that it "does not contend Lipp violated his fiduciary duties as a basis for terminating Lipp for cause."[18] It contended that the grounds to terminate Lipp included disparaging the Mixedbread's CEO in front of its officers, directors, employees, and outside investors, creating a toxic work environment, and not fulfilling his role as Chief Technology Officer.[19]

Mixedbread's amended interrogatory responses purported to withdraw the Fourth and Twelfth Affirmative Defenses.[20] For the Tenth Affirmative Defense, Mixedbread's amended interrogatory response professed to waive all prior arguments about whether Lipp's "conduct, statements, and acquiescence, waived, ratified, or are estopped from asserting the alleged claims."[21] In its stead, Mixedbread argued that Lipp should be estopped from arguing in contradiction to a statement on his visa application that his CTO employment was "at will."[22] The California court set an April 9 deadline for the parties to seek leave to amend their

---

[18] *Id.* at Resp. to Rog. 4.

[19] *Id.* at Mixedbread further clarified in its Answer in this case that it would "not seek to establish cause through any alleged breach of Lipp's fiduciary duties and disloyalty" but would focus on Lipp's disparagement of Mixedbread's CEO, development of a toxic work environment, and "failure to do his job." Ans. ¶¶ 21(a), 24.

[20] POB, Decl. Ex. 9, Resp. to Rog. 5, 10.

[21] *Id.* at Resp. to Rog. 9.

[22] *Id.*

6

pleadings.[23]  Mixedbread did not modify or amend its affirmative defenses in its pleadings consistent with the amended interrogatory responses.  Mixedbread reserves the right to modify the interrogatory responses.[24]

### D.    Procedural Posture

Lipp filed a Verified Petition for Advancement on April 15, 2026.[25] Mixedbread filed its Answer on April 27.[26]  The parties cross-moved for summary judgment.[27]  The Court heard oral argument on the cross-motions for summary judgment on June 24.[28]

## II.    ANALYSIS

### A.  Standard of Review

Under Court of Chancery Rule 56(h), "[w]here the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."  Here, the parties have cross-moved

---

[23] *Id.* at 20.

[24] *Id.*

[25] D.I. 1.

[26] D.I. 10.

[27] D.I. 14, 15.

[28] D.I. 23.

7

for summary judgment, and neither has argued that there is any issue of material fact that would prevent the Court from deciding the motions as a matter of law based on the record that has been submitted. "Accordingly, the Court will decide the parties' cross-motions as a matter of law based on that record." *Camden-Wyoming Sewer & Water Auth. v. Town of Camden*, 2017 WL 4119045, at *4 (Del. Ch. Sep. 18, 2017).

The parties present two central questions. First, in the context of the Bylaws Section 6.3, what is "defending" an action or proceeding? Second, when does an affirmative defense trigger advancement?

## B. Offensive Claims Are Not Advanceable

Under Delaware law, public policy counsels "assuring key corporate personnel that the corporation will bear the risks resulting from performance of their duties on the grounds that such a policy best encourages responsible persons to occupy positions of business trust, so Delaware courts have read indemnification contracts to provide coverage when that is reasonable." *DeLucca v. KKAT Mgmt. LLC*, 2006 WL 224058, at *7 (Del. Ch. Jan. 23, 2006). Generally, offensive litigation is not advanceable. *See Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *11 (Del. Ch. May 28, 2015); *Krauss v. 180 Life Scis. Corp.*, 2022 WL 665323, at *9 (Del. Ch. Mar. 7, 2022). There is no dispute that Mixedbread's counterclaims triggered advancement. Mixedbread dismissed those counterclaims.

8

I focus then on whether the affirmative defenses triggered advanceable responses by Lipp under the Bylaws.

## C. The Bylaws Limit Advanceable Claims to Those "Defending" an Action or Proceeding.

The Bylaws allow for "expenses incurred in defending any action or proceeding for which indemnification is required."[29] The term "defending" is not defined in the Bylaws. Our Courts have found that defending in the advancement context "has a broad meaning." *Citadel Hldng. Corp. v. Roven*, 603 A.2d 818, 824 n.7 (Del. 1992) ("**Defense.** That which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks. That which is put forward to diminish plaintiff's cause of action or defeat recovery. Evidence offered by accused to defeat criminal charge.") (quoting *Defense*, BLACK'S LAW DICTIONARY (5th ed.1979)). In *Citadel*, the Delaware Supreme Court affirmed the Superior Court's decision advancing costs to the indemnitee for affirmative defenses filed against the indemnitor. *Citadel*, 603 A.2d at 824. "Under both the statute and the Agreement, the corporation's obligation to pay expenses is subject to a reasonableness requirement." *Id.* at 823.

---

[29] § 6.3.

**D. Mixedbread's Counterclaims Triggered Advancement, and Its Dismissal of the Counterclaims with Prejudice Ended Lipp's Right to Advancement for Them.**

Mixedbread filed three counterclaims against Lipp in the California Action on October 30, 2025.[30] The counterclaims alleged that Lipp violated the employment agreement by misusing confidential information, breached his fiduciary duty by misusing confidential information and disparaging Mixedbread and its leadership, and for a judicial declaration regarding Lipp's termination.[31] On December 29, Mixedbread and Lipp stipulated to dismiss the counterclaims and the California Court dismissed the counterclaims with prejudice on January 8, 2026.[32] Under our jurisprudence, when the counterclaims were dismissed, the threat of litigation ended and with it Lipp's further right to advancement for the counterclaims. *See Carr v. Glob. Payments, Inc.*, 2019 WL 6726214, at *7 (Del. Ch. Dec. 11, 2019); *Duthie v. CorSolutions Med., Inc.*, 2009 WL 1743650, at *2–3 (Del. Ch. June 16, 2009); *Centrella v. Avantor*, 2024 WL 3249274, at *15–16 (Del. Ch. July 1, 2024).

---

[30] Ans. ¶ 22.

[31] *Id.*

[32] *Id.* at ¶ 24.

## E. Mixedbread's Affirmative Defenses May Trigger an Advanceable Response.

The counterclaims were gone, but the affirmative defenses remained. So we return to *Citadel*. But the facts in *Citadel* are inapposite here. There, Citadel sued its director, Roven, in federal court. In response, Roven filed counterclaims and affirmative defenses. The *Citadel* Court adopted a "broad reading" of the contract term "in defense." 603 A.2d at 824. It held that, "In this light, it seems clear that affirmative defenses are offered as a reason in law or fact why the plaintiff should not recover." *Id.* (internal quotations omitted). As the Court held, affirmative defenses were advanceable under the indemnity agreement Roven signed with Citadel.

The facts before me differ markedly. Here, Lipp filed suit against Mixedbread. That is non-covered offensive litigation. Mixedbread initially filed counterclaims. There is no dispute between the parties that Lipp's responses to those counterclaims are covered advancement expenses. Mixedbread also filed the affirmative defenses at issue here. Lipp seeks advancement for defending the affirmative defenses. While the general analysis of *Citadel* is helpful, its facts are inapplicable here. More useful is this Court's decision in *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392 (Del. Ch. 2009). There, the company sought to categorize the indemnitee's role by his position in the case caption. *Id.* at 400. The company argued that if the indemnitee was "suing", then he was not eligible for advancement

11

for responding to counterclaims and affirmative defenses. *Id.* The Court rejected a narrowly defined view of "defending" and adopted a claim-by-claim assessment to determine advancement eligibility. *Id.*

With some helpful law from *Citadel* and *Paolino* but non-analogous facts from *Citadel*, we go back to the drawing board. Both sides urge me to rely on different aspects of this Court's decision in *Mooney v. Echo Therapeutics* in determining whether a plaintiff-indemnitee like Lipp is covered when countering affirmative defenses set forth by a defendant-indemnitor like Mixedbread.[33] 2015 WL 3413272 (Del. Ch. May 28, 2015). In *Mooney*, Echo Therapeutics ("Echo") terminated Mooney, its CEO and Chairman of the Board of Directors, for alleged cause. *Id.* at *1. Mooney filed suit against Echo for breach of their employment agreement and other claims. *Id.* Echo filed an Answer including counterclaims and affirmative defenses, incorporating allegations of misconduct. *Id.* Echo filed an amended answer removing the allegations of misconduct in the amended counterclaims and affirmative defenses, with intent to cut off Mooney's advancement claim. *Id.* at *2. The Court dubbed this "Mooney I." Mooney filed a second action against Echo for wrongful use of civil proceedings in the Mooney I case to "vindicate his reputation." *Id.* The Court referred to this as "Mooney II."

_____

[33] As readers will no doubt recognize, parties' mutual reliance on the same case can be both boon and bane.

12

The Court's *Mooney I* ruling granted advancement for affirmative defenses.

Lipp urges me to track the holding in *Mooney I*. The Court held:

> I know of no case squarely holding that affirmative defenses can trigger a corporation's advancement obligations. I am convinced, however, that the policies underlying advancement justify the payment of fees when an officer defends against affirmative defenses that implicate his performance as a corporate official, much in the same way the assertion of counterclaims by a corporation can require advancement.

*Id.* at *10. The Court supplemented this reasoning with Echo's interrogatory responses. As the Court found, the interrogatory responses focused the affirmative defenses on Mooney's conduct in his official capacity:

> The gist of the Amended Affirmative Defenses is that relief for any harm allegedly suffered by Dr. Mooney is barred by his own breach of his Employment Agreement. The interrogatory responses, however, flesh out the import of these affirmative defenses. They state that:

> Dr. Mooney's violation of company policies approved by the Board governing business entertainment (expenses should be modest), contracts and agreements (all contracts and agreements must be in writing and approved as to form by the General Counsel), confidential information (maintained as confidential and not disclosed without an appropriate (meaning written) non-disclosure agreement) and workplace harassment constituted breaches of the employment agreement.

*Id.* Conversely, Mixedbread urges me to follow the holding in *Mooney II*. In *Mooney II*, the Court denied Mooney's request for advancement in the case he filed for wrongful use of civil proceedings. Mixedbread suggests that I follow this portion of the Court's rationale:

13

> If the term defending were construed more broadly, advancement would have the potential to become an unfettered license enabling disgruntled former officers and directors to litigate at the Company's expense. Vindicating one's reputation may serve important personal objectives, but that does not mean that filing an offensive lawsuit qualifies as "defending," within the meaning of 8 *Del. C.* § 145, against claims asserted by reason of the fact that one was an officer or director.

*Id.* at *11.

*Mooney*, of course, approvingly cites this Court's decision in *Fillip v. Centerstone Linen Services, LLC*. 2013 WL 6671663 (Del. Ch. Dec. 11, 2013). Fillip was the manager and CEO of Centerstone. *Id.* at *2. Fillip's employment agreement with Centerstone provided for a severance package if he resigned for "good reason." *Id.* Fillip resigned, arguably, for "good reason" and Centerstone refused to provide severance. *Id.* Fillip filed suit for breach of the employment agreement. *Id.* Centerstone counterclaimed alleging Fillip breached his fiduciary duties and the employment agreement. *Id.* Centerstone also asserted affirmative defenses that Fillip's claims were "barred by the doctrine of unclean hands and his own breaches of the Employment Agreement and the LLC Agreement." *Id.* at *3. Fillip sought advancement to defend the counterclaims and some of the affirmative defenses. *Id.* at *3–4. Centerstone responded by amending the counterclaims to remove the fiduciary breach allegations with the intent to avoid advancement. *Id.* The Court aptly narrowed the affirmative defense question to "whether a manager or officer is entitled to advancement for affirmative defenses *asserted against him*."

14

*Id.* at \*12 (emphasis in original).  To answer this, the Court focused on the text of the LLC agreement coupled with the relevant subsection of our LLC Act.  Article 3.7 of the LLC Agreement set the bounds of Fillip's advancement rights to include, "all costs, losses, liabilities, and damages whatsoever paid or incurred . . . in the performance of [a manager's or officer's] duties in such capacity . . . to the fullest extent permitted by the [LLC Act]." *Id.*  Because Centerstone was an LLC, Title 6 Section 18-108 of the LLC Act was invoked.  That statute allows an LLC to permit advancement, "from and against any and all claims and demands whatsoever." *Id.* (quoting 6 *Del. C.* § 18-108).  With these immensely broad advancement rights as backdrop, the Court held that Fillip was entitled to advancement to resist the affirmative defenses asserting that he breached his fiduciary duties to the corporation, rationalizing that Fillip was entitled to protect his future employment interests from these downstream impacts. *Id.*  For certain, the advancement rights available in the LLC context, and specifically in *Fillip*, are broader than those available here.  That said, *Fillip* and *Mooney I* suggest that in limited circumstances, an indemnitee's resistance to affirmative defenses may trigger advancement obligations.

Turning to the parties' tug-of-war over the *Mooney* decision, *Mooney I's* holding is most applicable here.  In *Mooney II*, Mooney filed offensive litigation focused on Echo's misuse of the system in *Mooney I*.  While arguably triggered by

15

Mooney's overall effort to "vindicate his reputation," it was a standalone action. Mooney was not defending against the counterclaims asserted by Echo. By contrast, in *Mooney I*, Mooney filed for breach of the employment contract, Echo counterclaimed and asserted affirmative defenses. The parties' actions were identical here. Lipp sued Mixedbread for breach of the employment contract, Mixedbread counterclaimed, and asserted affirmative defenses. The parties do not dispute that Mixedbread's October 30 counterclaim filing triggered advancement obligations related to those counterclaims.[34]

The question then becomes whether a response to the affirmative defenses triggers advancement. As originally asserted in the Third, Fourth, Tenth, and Twelfth Affirmative Defenses, advancement is triggered. Mixedbread's Bylaws Section 6.3 provide advancement for "Expenses incurred in defending any action or proceeding . . . ." I adopt the same broad view of defense that our Courts had in *Citadel*, *Fillip*, and *Mooney I*. Thus, I look to whether the affirmative defenses "implicate his performance as a corporate official." *Mooney*, 2015 WL 3413272, at *10. Although as originally constructed, the affirmative defenses encoiled Lipp's

---

[34] Tr. 04:16–19 ("So here's where there is no dispute between Mixedbread and Mr. Lipp. There is no dispute that their counterclaims, as asserted on October 30th of 2025, triggered advancement.")

16

role as CTO, there was one more twist: Mixedbread filed amended interrogatory responses that purported to halt Lipp's advancement rights.

**F. Mixedbread Adequately Disclaimed Three of the Four Affirmative Defenses.**

Having determined that Mixedbread's affirmative defenses could require responses that may trigger advancement rights, one issue remains: whether Mixedbread's amended interrogatory responses disclaiming the four relevant affirmative defenses were sufficient to end advancement. On April 27, Mixedbread amended its interrogatory responses in the California Action, allegedly affecting the Third, Fourth, Tenth, and Twelfth affirmative defenses.[35] The amended interrogatory responses disclaimed the Fourth and Twelfth Affirmative Defenses entirely.[36] The amended interrogatory responses purported to replace the prior fiduciary breach in the Tenth Affirmative Defense with an estoppel argument that Lipp could not contradict his statement on a visa application that his employment was "at will."[37] Finally, Mixedbread's amended interrogatory response for the Third Affirmative Defense removed an allegation of breach of fiduciary duty and replaced it with "grounds to terminate Lipp included disparaging the Mixedbread's CEO in

---

[35] POB, Decl. Ex. 9.

[36] *Id.* at Resp. to Rogs. 5, 10.

[37] *Id.* at Resp. to Rog. 9.

front of its officers, directors, employees, and outside investors, creating a toxic work environment, and not fulfilling his role as Chief Technology Officer."[38]

For the Fourth, Tenth, and Twelfth Affirmative Defenses, I find that Mixedbread's amended interrogatory responses were sufficient to terminate Lipp's advancement. Lipp focuses on this Court's holdings in *Carr*, *Duthie* and *Centrella*.

In *Mooney I*, the Court found that the interrogatory responses guided the approach to the affirmative defenses. So too here. But the interrogatory responses here constrain rather clarify Mixedbread's strategy. This Court has terminated advancement claims when parties have been precluded from proceeding by judicial estoppel or have affirmed that they will no longer proceed in any forum against the party seeking advancement. *See Carr*, 2019 WL 6726214, at *8 ("Here, the Defendants have removed the entire confidentiality cause of action and any indication of reliance upon it, and have agreed to forgo pursuit of such a claim now or later, in a manner that raises a judicial estoppel against such an action in the future."); *Duthie*, 2009 WL 1743650, at *3 ("Because no threat now exists, the Plaintiffs' defamation claims are no longer a direct response to, nor a negation of, any claims against them.").

---

[38] *Id.* at Resp. to Rog. 4.

In *Carr*, the company sued Carr, its Chairman and CEO, and he sought advancement. 2019 WL 6726214, at \*1–2. After the Court initially granted advancement, the company amended its claims in an effort terminate it. *Id.* at \*3. The company asked the Court to revisit its ruling in light of the amendments. *Id.* This Court noted that parties can end their advancement responsibilities, but the Court considered these with a skeptical eye because, "This Court, having found— over the Defendants' protests—a right to advancement, ought be wary of artful attempts at pleading around such a right. The 'mere relabeling' of claims will not support modification when the underlying litigation remains substantially the same." *Id.* at \*4 (internal citations omitted). This Court found that under the Merger Agreement, Carr was entitled to advancement "for legal actions involving an attribute or duty as a corporate officer or director." *Id.* at \*6. Vice Chancellor Glasscock summed up the test succinctly: "amendment can eliminate advancement obligations, but only if the amendment and the amending party's representations alter the claim in a manner that assures the Court the plaintiff will not face litigation that triggers advancement obligations." *Id.* at \*8. He cautioned that "the Court must be vigilant in review for artful pleading, and ensure that cosmetic changes to pleadings do not defeat vested contract rights." *Id.* The Court denied further advancement to Carr, finding that the company's amendments "substantially" altered its breach of contract claim against Carr. *Id.*

19

In *Centrella*, the company sued Centrella and Centrella sought advancement. As the Court found, the company sued Centrella by reason of the fact of his employment. *Centrella*, 2024 WL 3249274, at \*12–15. The company argued that it cut off Centrella's advancement rights when it dismissed claims against him. *Id.* at \*15. The *Centrella* Court noted that the company was equivocal about permanently dismissing claims. *Id.* at \*16. The company "repeatedly refused to agree not to reassert certain claims" and at oral argument refused to give a release. *Id. Centrella* held for the indemnitee because the indemnitor refused to make any definitive representation to not bring further advanceable litigation. *Id.* at \*17 (contrasting *Duthie*'s reliance on preclusive statements to not bring further advanceable claims with indemnitor's equivocations in *Centrella*).

Not so here. I find that Mixedbread's interrogatory responses fundamentally altered its affirmative defenses. It foreclosed itself from making the pre-amended interrogatory arguments. Mixedbread disclaimed its Fourth and Twelfth affirmative defenses completely in their amended interrogatory responses. Mixedbread's amended interrogatory response to the Tenth affirmative defense changed the allegation to prevent Lipp from arguing contrary to a statement on a visa application that his employment was "at will." This has nothing to do with his role and specific duties as CTO. Instead, it is connected to Lipp's generic status as an employee.

The interrogatory response for the Third affirmative defense is different. There, it affirmed that it did not contend that Lipp's termination was based on a violation of his fiduciary duties.[39] At the same time, the interrogatory maintained that part of the cause for Lipp's termination was "not fulfilling his role as CTO."[40] Mixedbread cannot cut off advancement responsibility for the Third affirmative defense when the interrogatory retains Lipp's responsibility by reason of the fact of his role as an officer. Mixedbread failed to fundamentally alter the Third affirmative defense.

For certain, it would have been cleaner if Mixedbread amended the affirmative defenses directly rather than relying on amended interrogatory responses. But turning to the Fourth, Tenth, and Twelfth affirmative defenses, Mixedbread has done enough to end advancement for Lipp. In this context, Mixedbread's interrogatory responses are judicial admissions. "Voluntary and knowing concessions of fact made by a party during judicial proceedings (*e.g.,* statements contained in pleadings, stipulations, depositions, or testimony; responses to requests for admissions; counsel's statements to the court) are termed "judicial admissions." *Merritt v. United Parcel Serv.*, 956 A.2d 1196, 1201 (Del. 2008) (citing *AT&T Corp. v. Lillis*, 953

---

[39] POB, Decl. Ex. 9, Resp. to Rog. 4.

[40] *Id.*

21

A.2d 241, 257 (Del. 2008) (discussing the scope of judicial admissions by counsel); *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ( "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them."); *Kopacz v. Day Kimball Hosp. of Windham County, Inc.*, 779 A.2d 862, 867 (Conn. App. Ct. 2001) ("Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings."); *John B. Conomos, Inc. v. Sun Co., Inc.*, 831 A.2d 696, 712 (Pa. Super. 2003) ("Statements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions.").  "[J]udicial admissions . . . are traditionally considered conclusive and binding both upon the party against whom they operate, and upon the court." *Merritt*, 956 A.2d at 1201–02.  I also note that Mixedbread represented at oral argument that it would only pursue the affirmative defenses as limited by the interrogatory responses.[41]  There, it shared that it filed amendments to the affirmative defenses in the California Action after the filing deadline but offered to work with Lipp's counsel to stipulate to the amendments.[42]  I find the totality of efforts sufficient to foreclose Mixedbread's ability to change position.

---

[41] Tr. 62:03–70:02.

[42] *Id*. at 62:08-15.

22

The interrogatory responses and Mixedbread's declarations to this Court in the filings and oral argument provide the certainty that the defendants lacked in *Centrella*. While I do not speak for the California Court, I caution Mixedbread that an attempt to resuscitate the prior affirmative defenses in that forum could reopen advancement entitlement and exposure to potential sanctions before this Court.

**G. Lipp is Entitled to Fees on Fees Proportional to Success.**

I also find that Lipp is entitled to fees on fees. A prevailing plaintiff is entitled to fees on fees in the indemnification and advancement context. *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 560–61 (Del. 2002). Lipp "prevailed in his request for advancement, but not on all points." *Marino v. Patriot Rail Co.*, 131 A.3d 325, 350 (Del. Ch. 2016). Lipp is entitled to fees on fees in proportion to his success in this matter. *Id.*

## III.    CONCLUSION

For these reasons, I find that Lipp is entitled to advancement consistent with this Report. Lipp is also entitled to fees on fees proportional to his success. This is a Final Report under Court of Chancery Rule 144.

/s/ David Hume, IV
David Hume, IV
Magistrate in Chancery

cc:    All counsel of record (by File & ServeXpress)

23